May it please the Court, my name is Rene Balladares and I represent Mr. Miles in this case. I would like to reserve two minutes for rebuttal at the end of my argument. In this case, the District Court erred in concluding that Mr. Miles' prior Ohio convictions qualified as controlled substance convictions pursuant to the sentencing guideline 4B1.2. According to the District Court, the Ohio statute of conviction, that is, Ohio Vice Statute 2925.03.82, was not categorically overbroad. And consequently, a conviction pursuant to that statute did qualify as a controlled substance offense conviction. However, this particular statute fails the categorical test for two reasons. Number one, it punishes conduct that is outside of what is specifically listed under 4B1.2. Number two, it punishes a lower mens rea than what is required by 4B1.2. As far as the first reason, the act that it punishes, the acts that it punishes, I should say, it punishes transportation. Transportation has been found by this circuit to be outside of what 4B1.2 actually punishes. But it's not just transportation, is it? It's transportation to deliver to someone else. It is transportation. However, at the end, it does have a second intent. That's where the problem does come into question, however. So if it were, in fact, transportation to deliver to someone else that may distribute it to someone else, that is a drug trafficking offense under the guidelines, isn't it? But it is with reasonable cost, and that's where the rubber meets the road, so to speak. That's where the problem really comes into being. But it doesn't matter if you transport it and you deliver it to someone else. Haven't you already engaged in drug trafficking under the guidelines? Well, no. If I may, the statute essentially punishes knowingly preparing for shipment, shipping, transporting, and other conduct. That is the first part of the statute. The second part of the statute punishes this conduct with the knowledge or having reasonable cost to believe such drug is intended for sale or resale by the defendant or someone else. And that is where we maintain that there is a problem, and a problem that the Sixth Circuit has identified as causing, at least certainly according to the Tenth Circuit, causing this particular subsection to be categorically overbought. This Circuit has already found in United States v. Heredia, or has recently concluded, that the reasonable cost to believe mens rea is a lower mens rea than actual knowledge. And because of that problem, this subsection of the Ohio statute is overbought. I'm sorry. I had a little trouble with this. The Sixth Circuit, which includes Ohio. Yes, it does. Has said that this is a lower threshold than the Federal statute required? The Sixth Circuit in United States v. Montanez essentially engaged in a full-blown analysis of the entire statute. The Sixth Circuit was not analyzing in its holding this particular section, but it engaged in a full analysis of A2, of the section in question. The Sixth Circuit did conclude that this particular subsection is categorically overbought, and that the only way to save the day for the government is through going into a modified categorical analysis. Now, here comes the Tenth Circuit. The Tenth Circuit went ahead and concluded in the Karem case that the Sixth Circuit approach was erroneous. And the Tenth Circuit went ahead and concluded that, in its view, in its opinion, that the particular subsection A2 was not categorically overbought. It did, however, specifically identify the circuit split between it and the Sixth Circuit. And it also went ahead and concluded that the circuit split was based upon its belief that the Sixth Circuit had found that the subsection was categorically overbought due to the fact that there was the reasonable cause to believe lower mens rea. Has the Sixth Circuit had a chance to look at this again, to your knowledge? No. The Sixth Circuit has looked at this matter in write, which is an unpublished opinion. It's an unpublished disposition cited by the government, cited by us also. The Circuit has also looked at this subsection in the United States v. Montanez. And then the Tenth Circuit, of course, looked at it and discussed at length the Sixth Circuit looking at it, but that's... And what date was the Tenth Circuit? I'm sorry, ma'am. What year was the Tenth Circuit case? That was last year. Last year. Last year. That was 07. Yes, indeed. Yeah. Now, it is our position that this circuit should go ahead and follow the position of the Sixth Circuit. This circuit has already concluded that transportation is conduct that is outside of what is punished by 4B1.2. This circuit has already also concluded in the United States v. Heredia that the reasonable cause standard is lower than actual knowledge. So, again, in the competing views of the Sixth Circuit and the Tenth Circuit, this circuit jurisprudence militates in favor of the position taken by the Sixth Circuit as acknowledged by the Tenth Circuit. So what happens if you go to the modified categorical? If you go to a modified categorical analysis, in this case, the government cannot carry the day simply because the documents of conviction as well as the transcript of the plea merely parrot what the statute, what 8.2, states, and it includes the reasonable cause language. So by looking at the modified categorical analysis, the government cannot save the day. So the district court only applied the categorical approach? The district court concluded that the conviction was under 8.2. It did do that. However, the district court basically stopped the analysis by concluding that, in fact, the statute was categorically not overbroad. At this point, unless I have additional questions, I'd like to save two minutes for rebuttal. Thank you very much. Good morning, Your Honors. Christina Brown for the District of Nevada for the government. Your Honors, while the defendant contends that the court erred by failing to conduct a proper modified categorical analysis in determining whether these prior convictions did, in fact, qualify as controlled substance offenses under 4B1.2, in fact, the defendant did not. In fact, the court did conduct the proper analysis. What the court did initially was to look at the statute overall and found that, overall, the statute is overbroad. The court then looked at the charging documents, the judgment, the transcript of, the plea colloquy, and the sentencing and determined the subsection under which the defendant was convicted, which is 8.2. And I believe the defendant is conceding that that is the subsection we're talking about. The dilemma is that the Sixth Circuit in Montana came out in analyzing actually different subsections of that statute and talked about 8.2 essentially in dicta. There was an unpublished case. Did you have a question, Your Honor? Well, I went round and round about the Sixth Circuit. It is a bit ambiguous. But on its face, the statute appears to say that if you just have reason to believe a kind of loosey-goosey standard that you can be convicted, and that seems to be a lesser standard than the Federal offense. It's just looking at the language. This is what the district court looked at. This was argued below at length twice, I think, because it's been back from the Ninth Circuit once before. And what the district court determined, and I don't think the Karam court, the Tenth Circuit decision, actually reached this. But what the district court concluded is the reasonable cause to believe language simply addresses situations of aiding and abetting. In all instances, the defendant has to have intent himself to traffic. If he doesn't have intent to traffic, he cannot be convicted under any scenario that the district court could come up with. In fact, we challenged the defendant to propose a situation in which the defendant could be convicted without himself having intent that the drugs be trafficked. And that is what the Tenth Circuit concluded themselves, getting back to the right decision. Then help me. What does the reasonable cause to believe have to do with? The language of the statute reads that no person shall knowingly engage in any of the acts set forth in the statute. When the defendant knows, affirmatively knows, or has reasonable cause to believe the controlled substance is intended for sale either by himself or by another person. But none of that language removes the intent requirement from what the defendant's mindset is, what he intends to do. The district court spoke about the impossibility of the government proving that the defendant knew positively what a third party intends. But in all instances, the defendant's intent himself as he prepares for shipment, ships, transports, delivers, prepares for distribution, or himself distributes a controlled substance, his intent is that those drugs he is handling are to be trafficked. Now, it could be he's wrong about the third party's subjective intention. But his intent as he engages in this conduct is that these drugs are to be trafficked. That is what the Karam Court found. And I want to address for a moment, if I might, the Sixth Circuit opinion in Montana's. I think that Montana's actually, and we respectfully say, misreads what the Wright Court did. The Wright Court said that any situation under subsection A2 constitutes a controlled substance violation. Now, Montana's came back and said that the Wright Court said that there was qualifying and unqualifying language in that. But a careful look at Wright, that's actually not what the court said at all. And there is some confusion in the way the Wright opinion is written because there is an ellipsis. And we talk about this in our answering brief in the Wright opinion. So it's hard to know precisely in Wright how that defendant was charged. But the language in Wright parrots the language of the statute exactly and finds that there can be little doubt that such conduct includes the import, export, distribution, or dispensing of a controlled substance or the possession with intent to do so. And concluded that the defendant's prior convictions were thus controlled substance offenses. So Montana's comes back in analyzing a different part of the statute and the government respectfully submits, really misreads and misinterprets what it is the Wright Court said. And that issue was not central to the holding of Montana's. Whereas Karam was confronted with this precise issue that is before the court and Karam found that all of the conduct described in the subsection is either a completed act of distribution or an integral part of the distribution process. And in any of those events, all of that conduct constitutes a controlled substance violation as defined under the guidelines. So unless there are any questions from the court, that's all I have. Counsel, looking at the Montana's case at, let's see, I believe at page 488, they were talking about the statute that they were analyzing. And one of the elements of the statute that they were analyzing was possessing a controlled substance in an amount equal to or exceeding three times the bulk amount, but an amount less than 100 times that amount. That clearly would not be under the categorical approach, clearly would not fit the guidelines, correct? Agreed. And the next item that they looked at was subsection 89, which says possess a controlled substance in an amount equal to or exceeding 100 times the bulk amount. Again, that also would not qualify under the guidelines. Do you agree with that? I agree. That's what the court concluded, yes. Okay. Thank you. Thank you. I would like to address two issues. Number one, the government's position that Montana's misread right is inaccurate. First of all, right is an unpublished decision of the Sixth Circuit. Montana's is not an unpublished decision, and it's a published decision by the circuit, in which the circuit essentially was trying to go ahead and harmonize a series of unpublished and published decisions that have been issued by the circuit, and consequently went out of its way to go ahead and do a full-blown analysis. But they were looking at the entire statute, not just a section of the statute that this defendant was charged with. That is, Mr. Miles was charged with, right? Absolutely correct. So they were looking at the entire statute, and they were saying, if you look at the entire statute, it's overbroad. No. They said two things. They said that the entire statute is overbroad, but they also said specifically that this subsection is overbroad too. They specifically said that this subsection is overbroad. And in doing so, the court cited to right. What the government doesn't discuss about right is that right does go ahead and go into a modified categorical analysis and looks at the documents. The problem is, the problem for the government in right was that when right talks about the documents in the section where you would have the reasonable cause to believe mens rea, that there are ellipses. That was deleted. Apparently, the charging documents in right did not have that. So the case in right did meet the modified categorical analysis, and that is what Montanez found. The second issue that I have to go ahead and address is the question that Judge Benitez asked the government, and that is concerning the other two sections that were analyzed, or the two sections that were analyzed by Montanez, that is section 6 and section 9, dealing with the bulk amount. Now, this subsection, A2, would allow for conviction for the same type scenario as when we have a bulk amount. Inasmuch as a reasonable person, under the reasonable cause to believe argument, if they are carrying, say, a big bag of marijuana totally for personal use, they're transporting that, they would be found guilty under A2, because a reasonable person would believe that that could be used for the purposes of sale, even though that's not what they're intending. And that's why Heredia says, this circuit in Heredia says the reasonable cause to believe cannot be equated with actual knowledge. Thank you very much. Thank you. The case just argued is submitted for decision. And we will hear the next case, which is Griffin v. Prosper.
judges: Wallace, Schroeder, Benitez